IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNIQUE SPORTS PRODUCTS, INC., a
Georgia corporation,

        Plaintiff,

v.

WILSON SPORTING GOODS CO., a
Delaware corporation,

        Defendant.

CIVIL ACTION NO.

1:05-CV-1816-JEC

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

**MAR 0 9 2007**

JAMES N. HATTEN, Clerk
By _____
Deputy Clerk

## O R D E R   &   O P I N I O N

This case is presently before the Court on defendant's Motion to
Compel [66], defendant's Motion for Partial Summary Judgment [68],
plaintiff's Motion for Leave to File Motion to Compel [74], and
defendant's Objection to Plaintiff's Submissions in Response to
Defendant's Motion for Partial Summary Judgment [89]. The Court has
reviewed the record and the arguments of the parties and, for the
reasons set out below, concludes that defendant's Motion to Compel
[66] should be **GRANTED in part** and **DENIED in part**, defendant's Motion
for Partial Summary Judgment [68] should be **GRANTED in part** and
**DENIED in part**, plaintiff's Motion for Leave to File Motion to Compel
[74] should be **DENIED** and defendant's Objection to Plaintiff's
Submissions [89] should be **OVERRULED**.

AO 72A
(Rev.8/82)

## BACKGROUND

Plaintiff is a Georgia corporation engaged in the business of selling sporting goods and related accessories. (Compl. [1] at ¶ 2; Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") [72] at ¶ 1.)  Defendant is one of the largest sporting goods companies in the world.  (Compl. at ¶ 3; Def.'s SUMF at ¶ 1.)  Plaintiff and defendant compete in the marketplace, particularly in the market for tennis-related items.  (Def.'s SUMF at ¶ 2.)

On May 10, 2004, plaintiff entered into a contract with Pistol Pete, Inc. ("PPI") for an exclusive license to use tennis legend Pete Sampras's name or likeness on a variety of tennis accessories.[1] (Compl. [1] at ¶ 7.)  Among other things, the contract gives plaintiff the exclusive world-wide right to use Sampras's image on tennis ball hoppers[2] from January 1, 2005 to December 31, 2007.  (*Id.* at ¶ 8.)  At the beginning of the contract term, plaintiff began marketing the Sampras Ballport, a tennis ball hopper bearing Sampras's photograph.  (*Id.* at ¶ 10.)

In March of 2005, plaintiff discovered that a PGA Super Store in Atlanta was selling the "Wilson 70 Ball Pick-up", a tennis ball

---

[1] Pete Sampras assigned the rights to use his name, likeness and endorsement to PPI.  (Compl. [1] at ¶ 6.)

[2] A tennis ball hopper is a container that is used to carry tennis balls and that assists in the collection of tennis balls that are on the tennis court.  (Compl. [1] at ¶ 7, n. 1.)

2

AO 72A
(Rev.8/82)

hopper manufactured by defendant, in packaging that contained Sampras's photograph. (Pl.'s Mem. of Law in Opp'n. to Def.'s Mot. for Partial Summ. J. ("Pl.'s Opp'n.") [82] at Ex. C.) Although defendant previously had a license to use Sampras's image on certain tennis accessories, that license expired on December 31, 2002. (Def.'s SUMF at ¶¶ 3, 9.) Defendant's use of Sampras's image on the 70 Ball Pick-up in 2005 was thus unauthorized, and obviously conflicted with plaintiff's exclusive license. (Compl. [1] at ¶ 13.)

On March 31, 2005, plaintiff asked Sampras's agent, Kevin Callanan, to explain why defendant was still using Sampras's image on its product. (Pl.'s Opp'n. [82] at Ex. C.) Callanan subsequently contacted Mike Wallace, defendant's Global Director of Tours and Sports Marketing. (Def.'s SUMF [72] at ¶ 14.) Callanan informed Wallace that plaintiff had an exclusive relationship with plaintiff for certain products, including tennis ball hoppers, and asked Wallace to investigate defendant's continuing use of Sampras's image on the 70 Ball Pick-up. (Pl.'s Opp'n [82] at Ex. D.)

Wallace's investigation revealed that defendant had simply failed to remove Sampras's image from the packaging of the 70 Ball Pick-up after defendant's license expired in 2002. (Def.'s SUMF [72] at ¶ 9.) As a result, defendant had continued to sell the 70 Ball Pick-up with Sampras's image on the packaging for several years after it was authorized to do so. (*Id.*)

3

On May 31, 2005, plaintiff's president, Gene Niksich, sent defendant a cease and desist letter formally notifying defendant of plaintiff's exclusive license and requesting that defendant immediately remove Sampras's image from the 70 Ball Pick-up. (Compl. [1] at Ex. F.)   Defendant's corporate counsel, Andre Pabarue, responded to Niksich's letter, assuring plaintiff that defendant was investigating the issue and working with Sampras's agent to resolve the matter.   (*Id.* at Ex. G.)

In June of 2005, the parties entered into informal settlement discussions.   (*Id.* at Exs. H-L.)   They exchanged several letters indicating a mutual desire to resolve the dispute amicably.   (*Id.*) However, in the midst of these discussions, and without responding to plaintiff's most recent settlement demand or otherwise providing any notice to plaintiff, defendant filed a lawsuit against plaintiff in the Cook County, Illinois state court seeking a declaratory judgment that the packaging on the 70 Ball Pick-up did not infringe or dilute plaintiff's rights in Sampras's image.   (*Id.* at Ex. M.)

Plaintiff subsequently filed this action in the Northern District of Georgia, asserting federal claims for violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B), and state law claims for unfair competition and deceptive trade practices. (*Id.* at ¶ 1.) · Shortly thereafter, plaintiff removed the Illinois state court action to the United States District Court for the

4

Southern District of Illinois, and moved for dismissal of that action on the ground that it was an improper race to the courthouse, and a wrongful attempt to coerce plaintiff into abandoning its claims. (Compl. [1] at ¶ 23.) Around the same time, defendant filed a motion to dismiss plaintiff's action in this Court on the basis of the first-filed rule. (Def.'s Mot. to Dismiss [7].)

After numerous filings by the parties in both cases, including briefing on the parties' respective motions to dismiss, a motion for preliminary injunction, and motions to compel and for expedited discovery, defendant voluntarily dismissed the Illinois action.[3] (Def.'s SUMF [72] at ¶ 28.) The parties then proceeded to litigate their dispute in this Court. They completed discovery on July 10, 2006. (Scheduling Order [53].)

Neither party was completely satisfied with the discovery responses it received. Accordingly, defendant has filed a motion to compel, and plaintiff seeks leave to file a motion to compel. (Def.'s Mot. to Compel [66]; Pl.'s Mot. for Leave to File Mot. to Compel [74].) Defendant has also filed a motion for partial summary judgment on plaintiff's Lanham Act claims. (Def.'s Mot. for Partial

---

[3] Prior to its voluntary dismissal of the action, the federal judge in Illinois reprimanded defendant for stonewalling discovery. (Pl.'s Resp. to Def.'s SUMF [81] at Ex. D.) According to plaintiff, that is why defendant chose to dismiss the Illinois lawsuit. (*Id.* at ¶ 28.)

5

Summ. J. [68].)   In addition, defendant has filed an objection to plaintiff's submissions in response to the motion for summary judgment.  (Def.'s Objection to Pl.'s Submissions [89].)  All of the above motions, as well as defendant's objection, are presently before the Court.

**DISCUSSION**

**I.   Defendant's Objection to Plaintiff's Submissions**

Before addressing the merits of defendant's motion for partial summary judgment, the Court will consider defendant's objection to plaintiff's submissions.   In its objection, defendant argues that various documents and statements cited in plaintiff's response are inadmissible and should not be considered by the Court in ruling on the summary judgment motion.  (Def.'s Objection [89].)  For the most part, defendant's objection raises arguments about tangential matters that are not at all important or necessary to the Court's resolution of the motion for summary judgment.   The Court will nevertheless address each specific objection in detail.

Defendant argues that the Court should not consider "Wikipedia" articles, gathered from an on-line encyclopedia website, concerning Sampras's tennis achievements.  (*Id.* at 2-3.)  Because defendant does not actually dispute the facts contained in the cited Wikipedia articles, its purpose in asserting this objection is unclear.   The Court notes that defendant has relied upon on-line news articles that

6

may be objectionable for similar reasons.  Nevertheless, the cited Wikipedia articles are not central, and certainly are not essential, to the Court's decision on the motion for summary judgment.  As such, defendant's objection to these articles is **OVERRULED as moot.**[4]

Defendant also contends that various statements in plaintiff's response are "unfounded" or "unsupported" and should be struck from the record.  (*Id.* at 3-4.)  Defendant objects, for example, to plaintiff's statement that "[d]efendant's advertisements materially affect the purchasing decisions of tennis professionals, players, and retailers."  (*Id.* at 4.)  This statement, and others like it, are supported by the testimony of plaintiff's corporate representative. (*See* Dep. of Gene Niksich.)  Defendant's objection on this ground is therefore **OVERRULED.**

Defendant similarly objects to plaintiff's characterization of defendant's prior settlement offer as "an admission of unjust enrichment."  (Def.'s Objection at 5-6.)  Defendant submitted the settlement offer in support of its motion for partial summary judgment.  (Def.'s Mem. in Supp. of Mot. for Partial Summ. J. at Ex. 18.)  The complete terms of the settlement offer are thus in the record.  The Court is capable of reading the offer and determining

---

[4]  Neither did the Court find it necessary to rely on evidence of defendant's prior conduct or the parties' Rule 408 settlement communication.   Accordingly, defendant's objections to those submissions are also **OVERRULED as moot.**

what, if any, conclusions should be drawn from its terms. Defendant's objection to plaintiff's interpretation of the offer is **OVERRULED**.

Finally, defendant objects to the admission of an exhibit and related facts concerning current sales figures for plaintiff's Sampras Ballport. (Def.'s Objection [89] at 4.) If, as defendant argues, this document was not produced in discovery, plaintiff will be asked to explain why it should be admitted at trial. Nevertheless, the Court did not rely upon the document in deciding the motion for summary judgment. Accordingly, defendant's objection to its use is **OVERRULED as moot.**

## II. Defendant's Motion for Partial Summary Judgment

Defendant seeks summary judgment on Count I of plaintiff's Complaint, which asserts claims under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B). (Def.'s Mot. for Partial Summ. J. [68].) In support of its motion, defendant primarily argues that plaintiff cannot prevail on its Lanham Act claims because it has no trademark rights in Sampras's image. (*Id.*) Assuming the Court rejects this argument, defendant contends that plaintiff is not entitled to any monetary relief on its claims, and that plaintiff should not be permitted to seek attorney's fees. (*Id.*)

### A. Summary Judgment Standard

Summary judgment is appropriate when the "pleadings,

8

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."" FED. R. CIV. P. 56(c). A fact's materiality is determined by the controlling substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50.

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits. Instead, Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of every element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* at 322-23 (quoting FED. R. CIV. P. 56(c)).

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323. However, the movant is not required to negate his opponent's claim. The movant may discharge

9

his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. After the movant has carried his burden, the non-moving party is then required to "go beyond the pleadings" and present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. While the court is to view all evidence and factual inferences in a light most favorable to the non-moving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (1986).

## B.   Plaintiff's Lanham Act Claims

Section 43(a) of the Lanham Act provides that:

(1)   Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

    (A)   is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

AO 72A
(Rev.8/82)

(B)   in commercial advertising or promotion,
misrepresents the nature, characteristics,
qualities, or geographic origin of his or her
or another person's goods, services or
commercial activities,

shall be liable in a civil action by any person who
believes that he or she is or is likely to be damaged by
such act.

15 U.S.C. § 1125(a). Section 43(a) "is remedial in nature and should

be interpreted and applied broadly." *Planetary Motion, Inc. v.

Techsplosion, Inc.,* 261 F.3d 1188, 1193 (11th Cir. 2001)(citing

*Montgomery v. Noga,* 168 F.3d 1282, 1300 (11th Cir. 1999)).

### 1.   False Endorsement

Relying on the plain language of § 43(a)(1)(A), courts have

repeatedly held that the Lanham Act supports a cause of action for

false endorsement.[5] *See, e.g., Parks v. LaFace Records,* 329 F.3d 437,

445-47 (6th Cir. 2003)(concluding that Rosa Parks could assert a

claim under § 43(a)(1)(A) against a rap group that used her name in

such a way as to cause confusion as to whether she sponsored or was

affiliated with the group) and *Waits v. Frito-Lay, Inc.,* 978 F.2d

1093, 1107 (9th Cir. 1992)(upholding Tom Waits' Lanham Act claim

---

[5]   Defendant suggests that plaintiff did not assert a claim for
false endorsement. (Def.'s Mem. of Law in Supp. of Mot. for Partial
Summ. J. [71] at 12, n. 11.)   The Court does not agree.   The
Complaint cites § 43(a)(1)(A) and alleges sufficient facts to comply
with the Federal Rules' notice pleading requirements as to a false
endorsement claim. (Compl. [1] at §§ 13, 27-28.) *See* FED. R. CIV. P.
8(a).

11

against Frito-Lay as a result of an unauthorized commercial suggesting that Waits endorsed Frito-Lay's products).[6] As is relevant to this case, false endorsement occurs when a defendant uses the name or likeness of a celebrity in a manner that is "likely to cause confusion among consumers as to the "'affiliation, connection, or association' between the celebrity and the defendant's goods" or as to the celebrity's "'sponsorship or approval' of defendant's goods." *Parks,* 329 F.3d at 446.

There is sufficient evidence in the record to raise a question of fact on plaintiff's false endorsement claim.  Defendant concedes that it had no license, and that it therefore was not authorized, to use Sampras's image on any of its products after December 31, 2002. (Def.'s SUMF [72] at ¶ 9.)  Nevertheless, defendant continued to sell the 70 Ball Pick-up, prominently featuring Sampras's picture on the packaging, through May of 2005.  (*Id.* at ¶¶ 9, 21.)  Common sense suggests that consumers were likely to be confused as to whether Sampras endorsed defendant's product, as does an application of the relevant "confusion factors."  *See Planetary Motion,* 261 F.3d at 1201, n. 22 (considering several factors to assess the likelihood of

---

[6]  Although the Eleventh Circuit has not considered a celebrity false endorsement claim, it has recognized that § 43(a)(1)(A) supports a claim for "mistaken affiliation" in addition to "false designation of origin."  *Montgomery,* 168 F.3d at 1297.  The Circuit Court has also stated more generally that § 43(a) "should be broadly construed."  *Id.* at 1300.

12

confusion, including: 1) the type and similarity of the marks; 2) the similarity of the parties' products, trade channels, and advertising media; 3) defendant's intent; and 4) evidence of actual confusion) and *Allen v. Nat'l Video, Inc.,* 610 F.Supp. 612, 627, n. 8 (D.C.N.Y. 1985)("When a public figure of Woody Allen's stature appears in an advertisement, his mere presence is inescapably to be interpreted as an endorsement.").

Moreover, plaintiff has standing to pursue a false endorsement claim against defendant.  Plaintiff negotiated and purchased an exclusive license to use Sampras's image on a variety of tennis accessories, including tennis ball hoppers.  Defendant's unauthorized use of Sampras's image unilaterally rendered plaintiff's license non-exclusive.  Plaintiff is thus "likely to be damaged by [defendant's] act[ions]."  15 U.S.C. § 1125 (a)(1).  Nothing more is required to assert a claim under § 43(a)(1)(A) of the Lanham Act.  *Id.*

Contrary to defendant's argument, plaintiff does not have to prove that it has a valid trademark in Sampras's image to prevail on its false endorsement claim.  As the Sixth Circuit explained in *Parks,* "even though Rosa Parks' name might not be eligible for registration as a trademark . . . a viable cause of action also exists under § 43(a) if consumers falsely believed that Rosa Parks . . . sponsored or approved [defendant's] song."  *Parks,* 329 F.3d at 447.  Plaintiff similarly has a viable cause of action under § 43(a)

13

if consumers were likely to believe, falsely, that Pete Sampras sponsored or approved the 70 Ball Pick-up.[7]

Neither, as defendant suggests, does plaintiff have to show that the photograph on the Sampras Ballport was confusingly similar to the photograph on the 70 Ball Pickup. The relevant question in this case is not whether consumers were likely to confuse the two Sampras photographs, but whether consumers were likely to be confused as to whether Sampras endorsed defendant's 70 Ball Pick-up. There is sufficient evidence in the record to raise a question of fact on this issue.

Defendant contends that it is entitled to summary judgment on plaintiff's Lanham Act claims in any event because plaintiff has produced no evidence of actual consumer confusion. (Def.'s Mem. of Law in Supp. of Mot. for Partial Summ. J. [71] at 17.) Actual confusion is the "best evidence of likelihood of confusion." *See Exxon Corp. v. Texas Motor Exch. of Houston,* 628 F.2d 500, 506 (5th

---

[7] It is thus immaterial that plaintiff's contract with PIP prohibited plaintiff from asserting a trademark in Sampras's image, or that trademark rights generally do not inhere in every picture of a celebrity. *See ETW Corp. v. Jireh Publ'g, Inc.,* 332 F.3d 915, 922 (6th Cir. 2003)("as a general rule, a person's image or likeness cannot function as a trademark" because it does not indicate designation) and *Pirone v. MacMillan, Inc.,* 894 F.2d 579, 583 (2nd Cir. 1990)("It cannot be said that every photograph of [Babe] Ruth serves [the] origin-indicating function" of a trademark).

Cir. 1980).[8]  This is a logical proposition:  if there is evidence of
actual confusion, a likelihood of confusion is usually a foregone
conclusion.  However, the converse is not true.  That is, that there
is  no  evidence  of  actual  confusion  does  not  mean  there  is  no
likelihood  of  confusion.    That  is  why  it  is  well-settled  that
evidence  of  actual  confusion  is  not  essential  to  a  claim  under  §
43(a) of the Lanham Act.    *Id.    See also, E. Remy Martin & Co. v.
Shaw-Ross Int'l Imp., Inc.,* 756 F.2d 1525, 1529 (11th Cir. 1985)("The
law is well settled in this circuit that evidence of *actual* confusion
.   .   .   is   not   necessary   to   a   finding   of   *likelihood*   of
confusion")(emphasis in original).

Defendant's admitted actions place this case squarely within the
plain language of § 43(a)(1)(A) of the Lanham Act, which prohibits
the use of any "word, term, name, symbol, or device" in a manner that
is "likely to cause confusion" as to the "sponsorship or approval" of
goods.  There is sufficient evidence in the record to raise an issue
of fact as to whether defendant's use of Sampras's image created a
likelihood of confusion as to whether Sampras sponsored, endorsed or
approved of defendant's product. Accordingly, defendant's motion for
summary judgment on plaintiff's false endorsement claim under §

---

[8]    Decisions of the former Fifth Circuit rendered prior to
October 1, 1981, are binding precedent in the Eleventh Circuit.
*Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en
banc).

15

43(a)(1)(A) of the Lanham Act is **DENIED**.

      2.    <u>False Advertising</u>

Section 43(a)(1)(B) of the Lanham Act creates a cause of action for false advertising. 15 U.S.C. § 1125(a)(1)(B). To succeed on a false advertising claim, plaintiff must establish that: 1) defendant's advertisements were false or misleading; 2) the advertisements deceived, or had the capacity to deceive, consumers; 3) the deception had a material effect on purchasing decisions; and 4) plaintiff has been or is likely to be injured as a result of the false advertising.[9] *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1260 (11th Cir. 2004).

The first element of the above test requires plaintiff to show that the statements at issue were either: 1) literally false as a factual matter; or 2) literally true or ambiguous, but misleading. *Id.* at 1261. In this Circuit, a plaintiff relying on an advertisement that is literally true but misleading must present "'evidence of deception' in the form of consumer surveys, market research, expert testimony, or other evidence." *Id.*

As with its false endorsement claim under § 43(a)(1)(A), plaintiff relies on defendant's use of Sampras's image on the

---

[9] The parties do not dispute that defendant's goods affect interstate commerce, another essential element of a false advertising claim. *See Hickson,* 357 F.3d at 1260.

packaging of the 70 Ball Pick-up to establish its false advertising claim under § 43(a)(1)(B).  (Compl. [1] at Count I.)  Defendant's use of Sampras's image certainly could have been misleading, given Sampras's exclusive relationship with plaintiff.  However, Sampras's picture alone is not "literally false."  *See Hickson,* 357 F.3d at 1261 (classifying defendant's advertisement as literally true but misleading).  Accordingly, plaintiff was required to present "evidence of deception" as described above.  *Id.  See also, Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002)(discussing the evidence required to prevail on a false advertising claim where an advertisement is "true but misleading.")  As plaintiff concedes that it has no evidence of deception, such as market research or consumer surveys, defendant's motion for summary judgment on plaintiff's false advertising claim under § 43(a)(1)(B) is **GRANTED**.

### C.   Damages and Attorney's Fees

Damages under the Lanham Act may include:  1) the defendant's profits; 2) any damages sustained by the plaintiff; and 3) the cost of the action.  15 U.S.C. § 1117.  *See also, Ramada Inns, Inc. v. Gadsden Motel Co.,* 804 F.2d 1562, 1564 (11th Cir. 1986).  In addition, the Court may award enhanced damages, according to the circumstances of the case, of up to three times the amount of actual damages.  15 U.S.C. § 1117(a); *Wesco Mfg., Inc. v. Tropical*

17

*Attractions of Palm Beach, Inc.,* 833 F.2d 1484, 1487 (11th Cir. 1987).

Contrary to defendant's argument, there is sufficient evidence in the record to justify a monetary award to plaintiff, both in the form of defendant's profits and plaintiff's damages. As to defendant's profits, "[t]he Eleventh Circuit Court of Appeals has determined that an accounting for [defendant's] profits is appropriate where: 1) the defendant's conduct is a deliberate and willful violation; 2) [defendant] is unjustly enriched; or 3) the sanction is necessary for future deterrence." *Optimum Tech., Inc. v. The Home Depot,* 2005 WL 3307508 *2 (N.D. Ga. 2005)(Thrash, J). Although defendant contends that its conduct was not deliberate, defendant unquestionably was unjustly enriched to the extent that its 70 Ball Pick-up sales can be attributed to its unauthorized use of Sampras's photograph. Moreover, it is important to deter conduct such as defendant's. Why would any company bother to negotiate and pay for a license to use Sampras's name or likeness, or any other celebrity for that matter, if it can do so for free and at very little risk? Assuming plaintiff prevails on its Lanham Act claim, there is sufficient evidence to justify an award to plaintiff of defendant's profits.[10]

---

[10] As to the amount of the recovery, it is sufficient for plaintiff to prove defendant's sales of the 70 Ball Pick-up during

18

There is also sufficient record evidence of plaintiff's damages to withstand defendant's motion for summary judgment. In calculating this aspect of damages, the Court may allow recovery for "all elements of injury . . . proximately resulting from [defendant's] wrongful acts." *Ramada Inns,* 804 F.2d at 1565. "Where the wrong is of such a nature as to preclude exact ascertainment of the amount of damages, plaintiff may recover upon a showing of the extent of damages as a matter of just and reasonable inference, although the result may be only an approximation." *Id.*

Plaintiff has produced testimony concerning lost sales to The Sports Authority as a result of defendant's actions. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Partial Summ. J. [82] at Ex. M.) There is other evidence in the record concerning additional potential damages. There is testimony, for example, that plaintiff expended significant effort and expense securing Sampras's exclusive endorsement for certain tennis accessories. (*See* Niksich Dep.) As mentioned, defendant's unauthorized use of Sampras's picture rendered plaintiff's license non-exclusive, undoubtedly diminishing its value.

---

the relevant time period. *Wesco,* 833 F.2d at 1488. "The burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales." *Id.* There is evidence in the record concerning defendant's sales of the 70 Ball Pick-up from January through May of 2005. Plaintiff has thus met its burden of producing evidence sufficient to withstand summary judgment on this aspect of its claimed damages.

19

In addition to the above damages, the Lanham Act authorizes the Court to award attorney's fees in "exceptional cases." *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 253 F.3d 1332, 1335 (11th Cir. 2001). "[A]n 'exceptional case' is one that can be characterized as 'malicious, fraudulent, deliberate and willful.'" *Id.* (citing *Dieter v. B&H Indus. of S.W. Fla., Inc.,* 880 F.2d 322, 329 (11th Cir. 1989)).

In support of its motion for summary judgment on attorney's fees, defendant points out that it offered to settle the parties' dispute by paying plaintiff a sum equal to its profits on the 70 Ball Pick-up after January 1, 2005. (Def.'s Mem. of Law [71] at 22 and Ex. 18.) According to defendant, plaintiff's rejection of that offer led to "nearly 10 months of additional litigation" and a "waste of time and money [that] can be attributed only to [plaintiff]." (*Id.* at 22-23.)

The Court does not entirely agree with defendant's characterization of the parties' respective responsibility for unnecessary litigation expenses. From at least April of 2005, before the parties became involved in litigation, defendant was aware that its use of Sampras's image was unauthorized, and had been unauthorized since December 31, 2002. (Def.'s SUMF [72] at ¶¶ 9, 15.) Yet, defendant did not offer to rectify its acknowledged "mistake" until October 17, 2005. (*Id.* at Ex. 18.) By that time,

20

defendant had filed a declaratory judgment action in Illinois, and both parties had expended large sums of money litigating this case in state and federal court in Illinois, as well as in this Court. Defendant's offer to pay a relatively small sum of money to "avoid the costs of litigation," after the parties had already incurred substantial costs in the litigation, does not in the Court's view entitle defendant to summary judgment on plaintiff's claim for attorney's fees.

Finally, a ruling on attorney's fees or damages would be premature at this juncture. Assuming that plaintiff prevails on its Lanham Act claim, the Court will be better equipped to fashion an appropriate damages award, possibly including attorney's fees, after considering the evidence at trial. Accordingly, defendant's motion for summary judgment on damages and attorney's fees is **DENIED**.

### III. Defendant's Motion to Compel

Defendant has filed a motion to compel seeking additional information concerning plaintiff's alleged damages. (Def.'s Mot. to Compel [66].) Specifically, defendant requests: 1) a more detailed computation of plaintiff's claimed damages; 2) an opportunity to depose a corporate representative who is prepared to testify about damages; and 3) responses to interrogatories and document requests relating to plaintiff's damages. (Def.'s Mem. of Law in Supp. of Mot. to Compel [66] at 4-14.) Defendant also requests information

21

concerning plaintiff's legal fees and litigation expenses.  (*Id.*)

After defendant filed its motion to compel, plaintiff supplemented its initial disclosures with a computation of each category of alleged damages.  (Pl.'s Resp. in Opp'n to Def.'s Mot. to Compel [70] at Ex. A.)   Plaintiff's computation is sufficiently detailed to meet the requirements of Local Rule 26.1 and Federal Rule 26(a)(1)(C).   (*Id.*)   In addition, the supplemental disclosure provides the damages information requested in defendant's interrogatories and document requests.  As plaintiff has voluntarily provided a detailed computation of its alleged damages, along with complete responses to defendant's interrogatories and document requests concerning damages, defendant's motion to compel that information is **DENIED as moot.**

As to defendant's request to depose a corporate representative on the issue of damages, defendant has already conducted a Rule 30(b)(6) deposition of Gene Niksich, plaintiff's president.  (*Id.* at Ex. B.)  To the extent that Mr. Niksich was not able to fully testify to plaintiff's alleged damages, that appears to be the result of a confidentiality agreement between the parties, requiring disclosure of certain information on an "Attorney's Eyes Only" basis.  (*Id.* at 2.)  Under the circumstances, another Rule 30(b)(6) deposition is not necessary or warranted.   Defendant's motion to compel a second corporate deposition is **DENIED.**

22

As to defendant's request for information concerning plaintiff's legal fees and litigation expenses, this information is not ordinarily exchanged during pre-trial discovery.    Instead, a party seeking attorney's fees generally files a fee petition after succeeding on its claims.    As defendant points out, however, plaintiff's request for attorney's fees is driving this litigation, which likely would have settled long ago were it not for the substantial fees that plaintiff has incurred.    Moreover, plaintiff cites no authority prohibiting discovery on attorney's fees at this stage in the litigation, and the only authority the Court has found suggests that such discovery is appropriate.    *See Maddow v. Proctor & Gamble Co., Inc.,* 107 F.3d 846, 853 (11th Cir. 1997)(upholding district court's order compelling discovery on plaintiffs' fee arrangement).

As plaintiff seeks recovery of its attorney's fees and expenses, discovery on that issue is "relevant to [plaintiff's] claim[s]" and therefore discoverable.    FED. R. CIV. P. 26(b)(1).    In addition, and as a practical matter, providing defendant some information concerning plaintiff's legal fees and litigation expenses will likely assist the parties in reaching a settlement.    Accordingly, the Court **GRANTS** defendant's motion to compel a computation of the current amount of plaintiff's claimed attorney's fees and litigation expenses.    Plaintiff need not provide detailed bills, which could

AO 72A
(Rev.8/82)

potentially reveal trial strategy.   Plaintiff can comply with this

Order simply by providing the total dollar amount of attorney's fees

and expenses incurred in the litigation thus far.[11]

## IV.   Plaintiff's Motion for Leave to File a Motion to Compel

Plaintiff seeks leave to file a motion to compel.   (Pl.'s Mot.

for Leave to File a Mot. to Compel [74].)   Plaintiff received

defendant's responses to its second discovery requests on July 10,

2006.   (*Id.*)   Pursuant to Local Rule 37.1(B), any motion to compel

addressing these responses was due within ten days.   N.D. Ga. Rule

37.1(B).   Plaintiff did not request an extension of the deadline, or

file its motion for leave, until August 4, 2006, well after the

deadline had passed.   (*Id.*)

Plaintiff offers no persuasive justification for its failure to

file the motion to compel within the deadline.   By way of excuse,

plaintiff states that the parties have been engaged in  settlement

negotiations  since  July  10,  2006,  and  that  plaintiff  was  only

recently able to evaluate the sufficiency of defendant's responses.

---

[11]   The Court declines to award defendant any attorney's fees or
expenses associated with its motion to compel. (*See* Def.'s Reply in
Supp. of Mot. to Compel [77] at 8.)   Defendant's success on the
motion was limited, and plaintiff was substantially justified in
resisting discovery on attorney's fees and expenses, which is usually
not conducted prior to trial.   *See Maddow,* 107 F.3d at 853 ("A court
must impose attorney's fees and expenses when compelling discovery
unless  the  party  was  substantially  justified  in  resisting
discovery.").

AO 72A
(Rev.8/82)

(*Id.*)    It is unclear how the settlement negotiations prevented plaintiff's attorney from reviewing defendant's discovery responses. If plaintiff wanted to postpone its work on the case to avoid incurring additional fees pending settlement, it should have requested an extension of the deadline or a stay of the case.

Not only did plaintiff fail to request an extension, plaintiff refused defendant's request for an extension, a request defendant claims to have made to enable the parties to seriously pursue settlement. (Def.'s Opp'n to Pl.'s Mot. for Leave to File Mot. to Compel [78] at 3.)  Given plaintiff's refusal to voluntarily extend the deadline, its request to file a motion to compel outside of the deadline is bold, to say the least.

Finally, plaintiff's proposed motion to compel is not persuasive on the merits.  The apparent basis for the motion is plaintiff's unfounded suspicion that defendant did not respond completely to plaintiff's second discovery requests.   For example, plaintiff requested documents and information concerning "when [defendant's] customers first learned that they were purchasing ball hoppers with the image of Roger Federer on the packaging instead of Pete Sampras." (Pl.'s Mot. to Compel at 5.)  Defendant responded that it did not have any information concerning when individual customers learned that defendant's ball hopper changed packaging, and that after a reasonable, good faith search, it was unable to locate any responsive

25

documents.   (*Id.* at 5-6.)   There is no evidence to suggest that defendant's response was deceptive or incomplete.  The Court imagines that most customers first learned that they were purchasing a ball hopper with the image of Roger Federer at the time of their purchase. That defendant did not document the moment of its customers' awareness of the new packaging is not unusual or suspicious.

In short, there is no good reason why plaintiff did not file its motion to compel within the deadline, and the motion appears to be meritless in any case.  Accordingly, plaintiff's motion for leave to file a motion to compel is **DENIED**.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** defendant's Motion to Compel [66], **GRANTS in part** and **DENIES in part** defendant's Motion for Partial Summary Judgment [68], **DENIES** plaintiff's Motion for Leave to File Motion to Compel [74], and **OVERRULES** defendant's Objection to Plaintiff's Submissions [89].


SO ORDERED, this ___8___ day of March, 2007.

JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)